DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment on a jury verdict in a breach of contract claim before the Huron Municipal Court. Because we conclude that there was insufficient evidence to support the jury's award of sanctions, we reverse in part and affirm in part.
 {¶ 2} Appellant, Sonya Baker, and her husband, Joseph Gump, are longtime residents of the Beachwood Villas Condominiums on Lake Erie in Huron, Ohio. Appellee is the Beachwood Villas Condominium Association.
 {¶ 3} According to trial testimony, in 1996, appellant contemplated the purchase of a large boat which she intended to co-own with her son-in-law. Gump testified that he learned that there was a 36 foot boat slip available in the marina reserved for Beachwood Villas Condominium owners. Gump reported that, on inquiry, he was assured by members of appellee's marina committee that the marina would be adequate for the 36 foot Maxum cabin cruiser that his wife and son-in-law intended to purchase. He also reported that the couple relied on an Army Corps of Engineers permit incorporated into the property description of the marina slip lease. The Corps permit indicated that the entryway to the marina was to be dredged to a level of 564 feet International Great Lakes Datum ("IGLD").[1]
 {¶ 4} Appellant leased the slip and she and her son-in-law purchased the 36-foot boat. According to appellant's son-in-law, who was the principal operator of the boat, all was well for one or two seasons. Then, the son-in-law reported, the boat began to scrape the bottom of the marina. Complaints to appellee's officers were unavailing. Eventually, the boat was placed in storage and the leased slip went unused.
 {¶ 5} In December 2001, appellant sued appellee for breach of contract, alleging that appellee had breached its duty to maintain the marina depth at 564 feet IGLD pursuant to the Corps of Engineers permit. Appellee countersued, seeking to collect an unpaid $684 capital improvement assessment.
 {¶ 6} The matter proceeded to a jury trial at which appellant's husband and son-in-law testified to their reliance on the Corps of Engineers permit to establish a 564 foot IGLD depth in the marina. Appellant also presented expert testimony that an October 2001 survey of the marina revealed that portions of the marina were not dredged to that level. Another expert opined that appellant's boat could not be safely operated at the depths indicated in the 2001 survey.
 {¶ 7} At the conclusion of appellant's case-in-chief, appellee moved for, but was denied, a directed verdict. After appellant's case-in-chief, appellee presented the testimony of Dr. Charles Herdendorf, a limnologist and retired director of Ohio State University's Lake Erie Research Program. Dr. Herdendorf, who also holds a certificate of coastal engineering from the Army Corps of Engineers, testified that he was a resident of Beachwood Villas when the marina was constructed and assisted in preparing the application for the permit at issue. According to Dr. Herdendorf, the 564 foot IGLD level referenced on the permit was for construction purposes, not operating purposes. It was the level of the clay floor of the lake and was intended as a foundation level of construction, not a benchmark of a mandatory depth.
 {¶ 8} On its counterclaim, appellee presented testimony of its resident manager, who testified that appellant's $684 unpaid capital assessment amount had ballooned to $1,040 with the addition of interest and penalties. He also testified that he had expended $2,500 of his own time attempting to collect the arrearages and $1,535 in attorney fees related to the collection. The resident manager also testified that the association had incurred $6,379 in attorney fees related to defense of appellant's breach of contract claim. He also claimed approximately $7,500 of his own time and expenses in defending the suit.
 {¶ 9} On closing, appellee's counsel urged that appellant's suit had been brought in "bad faith" and that appellee should be awarded its attorney fees and defense costs on this basis. The trial court instructed the jury that it could award attorney fees and costs only, "* * * if you find that [appellant's] case is frivolous, if you conclude that [appellant's] case is groundless, and that she brought this case in bad faith." Following deliberation, the jury returned a verdict against appellant on the principal claim and in favor of appellee on the counterclaim. The jury awarded appellee damages of $5,000 on the counterclaim and found appellee was entitled to $7,914.30 in attorney fees and costs on the defense.
 {¶ 10} The trial court denied appellant's motion for a judgment notwithstanding the verdict and entered judgment on the verdict. From that judgment, appellant now brings this appeal, setting forth the following three assignments of error:
 {¶ 11} "The trial court erred in denying plaintiff's motion for judgment notwithstanding the verdict."
 {¶ 12} "The jury's verdict awarding $5000 to defendant on its counterclaim for unpaid assessments, and the subsequent judgment thereon, was against the manifest weight of the evidence."
 {¶ 13} "The jury's verdict awarding $7914.30 to defendant for costs and attorney fees in defending plaintiff's suit, and the subsequent judgment thereon, was against the manifest weight of the evidence."
 I. {¶ 14} Appellant does not contest the verdict against her on her principal breach of contract claim. Neither does she dispute the jury's determination that she owed fees on appellee's unpaid capital assessment counterclaim. What appellant contests is the award of appellee's attorney fees in defense of the principal claim and appellee's employee costs in defense of the principal claim and in prosecution of the counterclaim.
 {¶ 15} As appellant properly points out, Ohio follows the "American rule." Under this rule each party involved in litigation must pay his or her own defense costs, including attorney fees, in most circumstances. Krasny-Kaplan Corp. v.Flo-Tork, Inc. (1993), 66 Ohio St.3d 75, 77; Sorin v. Bd. ofEdn. (1976), 46 Ohio St.2d 177, 179. Exceptions to the rule are when there is a statutory directive shifting the costs, Sorin
at 180-181, the parties have contractually agreed to shift the burden of litigation costs, Krasny-Kaplan Corp., supra, or a losing party acted "* * * in bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons." Sorin at 181.
 {¶ 16} In Sorin, the Ohio Supreme Court observed that the common law bad faith exception to the American rule was historically confined to actions, "* * * sounding in tort[,]" and refused to extend the exception's application beyond those boundaries. See id. at 181-182. The court specifically refused to apply the exception in a contract dispute. Id. at 183.
 {¶ 17} With respect to statutorily permitted sanctions, the only justification appellee articulated at trial was Civ.R. 11. However, Civ.R. 11 only authorizes sanctions against attorneys, not parties.[2] Shaffer v. Mease (1991),66 Ohio App.3d 400, 410. Consequently, the rule may not be the foundation of the award here.
 {¶ 18} Sanctions may be awarded pursuant to R.C. 2323.51 for "frivolous conduct." In material part, R.C. 2323.51(A)(2)(a)(i) and (ii), defines "frivolous conduct" in a civil action as either conduct which (1) "* * * obviously serves merely to harass or maliciously injure another party to the civil action * * *" or (2) "* * * is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law."
 {¶ 19} There is some question as to whether an R.C. 2323.51
sanction should ever be submitted to a jury. Section (B)(1) of the statute provides:
 {¶ 20} "* * * at any time prior to the commencement of the trial in a civil action or within twenty-one days after the entry of judgment in a civil action * * * the court may award court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal to any party to the civil action or appeal who was adversely affected by frivolous conduct. * * *" (Emphasis added.)
 {¶ 21} The statute requires procedures and hearings which are clearly outside the presence of a jury. R.C. 2323.51(B)(2). Moreover, the threshold determination of whether an action is legally warranted under R.C. 2323.51(A)(2)(a)(ii) is a question of law, Passmore v. Greene Cty. Bd. of Elections (1971),74 Ohio App.3d 707, 712, and, therefore, not amenable to submission to a jury. Whether to grant sanctions lies within the discretion of the court, Wiltberger v. Davis (1996), 110 Ohio App.3d 46,52, and is likewise not a jury function.
 {¶ 22} The only factual issue which might arguably be properly placed before a jury is whether a party's conduct was obviously intended "merely to harass or maliciously injure." R.C.2323.51(A)(2)(a)(i). "Merely" is the adverb form of the adjective "mere" which means, "being nothing more than * * *." Merriam Webster's Collegiate Dictionary (10th Ed. 1996) 727. The finder of fact must then conclude that the purpose of the suit was for no other purpose than to harass or maliciously injure the defendant. Such a finding by either the court or a jury must be supported by competent, credible evidence. Wiltberger, supra.
 {¶ 23} In this matter, the trial court's denial of a directed verdict at the conclusion of appellant's case-in-chief is at least arguably a determination by the court that appellant's lawsuit is not legally unwarranted. This is a conclusion with which we concur.
 {¶ 24} With respect to appellant's conduct, we have carefully examined the transcript of the proceedings in this matter and fail to find any evidence that this lawsuit was motivated by no other purpose than malice or an intent to harass or, even in the words of the trial court's instruction, "brought in bad faith." Accordingly, construing the evidence most favorably in favor of appellee, we find that reasonable minds could only conclude that appellee failed in its burden to establish frivolous conduct. See Civ.R. 50(A); Mantua Mfg. Co. v. Commerce Exch. Bank (1996),75 Ohio St.3d 1, 4. Consequently, the trial court erred in denying appellant's motion for j.n.o.v., and appellant's first and third assignments of error are well-taken.
 II. {¶ 25} With respect to appellee's counterclaim, at trial appellee's resident manager testified that appellee's bylaws and declaration of condominium allowed it to collect penalties, interest, attorney fees and other costs on delinquent assessments. Appellant submitted into evidence portions of the condominium declaration and bylaws in support of this assertion. The bylaws provide that with respect to unpaid assessments, "[t]o the extent permitted by the Declaration [of Condominium], any decision or statute or law now or hereafter effective, the amount of any delinquent or unpaid charges or assessments and interests, costs as above provided, shall be a lien or charge against the unit * * *." Neither in the portion of the declaration of condominium submitted as defense Exhibit "W," nor the "Sixth Amendment to Declaration of Condominium Ownership," submitted as defense Exhibit "S," is there any mention of any delinquency fees, costs or attorney fees payable in association with the collection of assessment arrearages. The documents submitted belie the assertion of the resident manager that appellant is contractually obligated for these costs and fees.
 {¶ 26} Again, construing the evidence most strongly in favor of appellee, we find that reasonable minds could only conclude that appellant failed to establish a contractual basis for penalties, interest, costs and attorney fees related to collection of appellant's assessment arrearage. Consequently, the trial court erred when it denied appellant's motion for a j.n.o.v. on this issue. Accordingly, appellant's second assignment of error is well-taken.
 {¶ 27} On consideration whereof, the judgment of the Huron Municipal Court is reversed in part and affirmed in part. This matter is remanded to the court for a determination of the proper amount due on appellant's assessment arrearages without delinquency fees or interest, and the amount of what costs, if any, may be taxed by law. Costs to appellee.
Judgment Reversed in part and Affirmed in part.
Mark L. Pietrykowski, J., Judith Ann Lanzinger, J., and Arlene Singer, J., concur.
[1] The IGLD is the Great Lakes' equivalent of sea level with zero determined by the water level of the St. Lawrence River as it exits the Great Lakes into the Atlantic Ocean. 564 IGLD would be 564 feet above that point.
[2] In 1994, Civ.R. 11 was amended to permit sanctions to pro se litigants. Federal Land Bank Assn. v. Walton (June 16, 1995), 3d Dist.App. No. 16-94-9.