**WRINCH, Appellant,**

v.

**MILLER et al., Appellees.**

[Cite as Wrinch v. Miller, 183 Ohio App.3d 445, 2009-Ohio-3862.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 24136.

Decided Aug. 5, 2009.

---

**13.** See App.R. 12(A)(1)(c).

Brian J. Williams, for appellant.

Kenneth L. Turowski, for appellees.

BELFANCE, Judge.

{¶ 1} Appellants, Charity Wrinch and her attorney, Brian Williams, appeal from the judgment of the Summit County Court of Common Pleas in favor of appellees, David and Keville Miller.

I

{¶ 2} In April 2004, Wrinch entered into a residential lease with an option to purchase a house owned by the Millers. She paid an initial amount of $1,000 as consideration for the option to purchase and agreed to pay $595 per month for the lease term of 36 months. Wrinch moved into the home in May 2004.

{¶ 3} In 2005, the parties began experiencing difficulties. Wrinch often struggled to pay her rent in full and in a timely fashion. The Millers were flexible with her on this issue, but ultimately filed an eviction action on July 15, 2005, for nonpayment of rent. The dispute was resolved, and the Millers abandoned the eviction claim.

{¶ 4} In the spring of 2005, Wrinch informed the Millers of a leak in the bathroom of the rental property. In September 2005, the Millers' maintenance man inspected the leak, repaired the faulty plumbing, removed the entire bathroom floor, and replaced the floor with new material.

{¶ 5} The Millers filed another eviction action against Wrinch on September 16, 2005. At the time, Wrinch was attempting to secure government aid to help her pay her rent. In an effort to further evidence her need for such aid, Wrinch asked the Millers to file a three-day notice to vacate against her. In response, the Millers filed an eviction action. This action was also abandoned by the Millers when Wrinch became current in her rent.

{¶ 6} On October 13, 2005, a portion of the ceiling in Wrinch's daughter's bedroom collapsed due to a leak in the home's roof. Wrinch informed the Millers of the damage and claimed that David Miller never came to personally inspect the damage. She also complained that repairs did not commence until sometime later, when the weather turned cold. Wrinch filed a complaint with the Akron Health Department and began placing her rent payments in escrow beginning with rent for November 2005.

{¶ 7} At the end of October 2005, the Millers sent Wrinch a 30–day notice to vacate, and the parties ultimately agreed that Wrinch would vacate the premises by the end of December 2005. Wrinch complied.

{¶ 8} On March 7, 2006, Wrinch filed an action for retaliation, breach of contract, failure to return a security deposit, and intentional and/or negligent infliction of emotional distress. Wrinch claimed that the Millers breached the lease by failing to maintain the premises and then retaliated against her with eviction actions when she complained about needed repairs. She further alleged that the Millers wrongfully withheld the $1,000 deposit she tendered at the beginning of the lease term. Her complaint for emotional distress was predicated on her allegation that the actions of the Millers during her tenancy led her to experience mental anxiety, humiliation, and embarrassment.

{¶ 9} The Millers answered that although the lease provided that Wrinch would be responsible for any necessary repairs to the property, they made some repairs to the home when Wrinch informed them of problems, and any eviction actions were based on Wrinch's failure to pay rent. They also maintained that the lease provided that the $1,000 payment tendered by Wrinch was a nonrefundable amount paid as consideration for the option to purchase the home. The Millers also filed counterclaims for breach of contract and fraud. They alleged that Wrinch was in breach for failure to address repairs needed on the home as they arose.

{¶ 10} After discovery had begun, Wrinch filed an amended complaint, deleting her claim for emotional distress but retaining the other claims. The Millers answered the amended complaint and asserted a new counterclaim for malicious prosecution. The Millers contended that Wrinch's claims for emotional distress, retaliation, and return of a security deposit were baseless and instituted with malice. Wrinch answered the counterclaim, stating that her claims were properly motivated based on the facts and circumstances of the parties' dealings. She further stated that the abandonment of her emotional-distress claim was simply a litigation strategy. Lastly, she contended that the Millers' malicious-prosecution claim could not be presented as a counterclaim in this matter and was thus premature as the litigation had not yet ended.

{¶ 11} The Millers filed a motion for summary judgment with respect to Wrinch's claims for retaliation, breach of contract, and failure to return a security deposit. The trial court found that the Millers were entitled to prevail as a matter of law on Wrinch's claim for failure to return a security deposit. The trial court determined that the $1,000 paid by Wrinch was nonrefundable consideration for the option to purchase the property and not a refundable security deposit. Wrinch's remaining claims and the Millers' counterclaims were tried to a jury in July 2007.

{¶ 12} The jury found in favor of the Millers on Wrinch's remaining claims for retaliation and breach of contract. The jury found in favor of Wrinch on the Millers' fraud claim. However, the jury found in favor of the Millers on their claims for breach of contract and malicious prosecution. With respect to damages, the jury chose only to award damages in the amount of $18,000 on the malicious-prosecution claim.

{¶ 13} Following the jury verdict, Wrinch filed a motion for judgment notwithstanding the verdict. The trial court denied the motion after conducting a hearing. Wrinch then filed a motion for reconsideration, which the trial court also denied.

{¶ 14} Also following the jury verdict, the Millers filed a motion for pre- and postjudgment interest and for attorney fees to be paid by Wrinch's counsel, Brian Williams, pursuant to R.C. 2323.51, concerning frivolous conduct in filing civil claims. The trial court held a hearing on the motion, during which it took testimony as to the fees charged by the Millers' counsel. The trial court ruled that the conduct of Wrinch and Williams was frivolous with respect to pursuit of the claims for breach of contract, retaliation, and return of a security deposit and that this conduct adversely affected the Millers. The trial court noted that the Millers did not pursue sanctions against Wrinch and found that it would be inequitable to order Williams to bear the entire amount of the Millers' litigation

expenses. The trial court also awarded the Millers postjudgment interest, but denied prejudgment interest. The instant appeal followed.

## II

{¶ 15} The appellants' brief contains six assignments of error in which they contend that (1) the malicious-prosecution claim should have been dismissed pursuant to Civ.R. 50, (2) the trial court erroneously imposed discovery sanctions against them, (3) the trial court erred by not awarding Wrinch the full amount of attorney fees requested for the Millers' abuse of discovery, (4) on a second occasion, the trial court erred by not awarding Wrinch and Williams any sanctions for the Millers' abuse of discovery, (5) the trial court failed to comply with R.C. 2323.51 in imposing sanctions against Williams, and (6) the evidence was insufficient to support the amount of fees awarded to the Millers to be paid by Williams pursuant to R.C. 2323.51.

{¶ 16} We note that the final two assignments of error pertain to the trial court's assessment of attorney fees and costs against Williams pursuant to R.C. 2323.51. Wrinch does not have standing to assert these errors, as sanctions were not imposed against her. However, in the notice of appeal for this matter, Williams named himself as an appellant, indicating that he was representing himself pro se. Accordingly, the assignments of error with respect to the imposition sanctions have been properly presented for our review.

{¶ 17} We will combine some assignments of error to facilitate our analysis.

## MALICIOUS PROSECUTION

{¶ 18} After Wrinch amended her complaint to remove the claim for negligent and/or intentional infliction of emotional distress, the Millers answered, adding a counterclaim for malicious prosecution to their counterclaims against Wrinch. In response to the new counterclaim, Wrinch argued that the malicious-prosecution claim could not be maintained because the litigation that was the subject of the malicious-prosecution claim was not yet terminated. At trial, Wrinch moved for a directed verdict on the malicious-prosecution claim.

{¶ 19} Review of a trial court's ruling on a motion for directed verdict presents a question of law; thus, our review is de novo. *March v. Associated Materials, Inc.* (Nov. 3, 1999), 9th Dist. No. 19413, 1999 WL 1037739, *3. Pursuant to Civ.R. 50(A)(4), when a motion for directed verdict has been made, the court must construe the evidence in favor of the nonmoving party and must grant the motion if the only reasonable conclusion to be drawn from the evidence so construed is adverse to the nonmoving party. See also *Nawal v. Nawal* (July 19, 1995), 9th Dist. No. 2368–M, 1995 WL 434398, *2. The same analysis applies on review of

such a motion. Id., citing *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284, 21 O.O.3d 177, 423 N.E.2d 467.

{¶ 20} The elements of malicious civil prosecution are:

"(1) malicious institution of prior proceedings against the plaintiff by defendant, * * * (2) lack of probable cause for the filing of the prior lawsuit, * * * (3) termination of the prior proceedings in plaintiff's favor, * * * and (4) seizure of plaintiff's person or property during the course of the prior proceedings * * *."

*Robb v. Chagrin Lagoons Yacht Club, Inc.* (1996), 75 Ohio St.3d 264, 269, 662 N.E.2d 9, quoting *Crawford v. Euclid Natl. Bank* (1985), 19 Ohio St.3d 135, 139, 19 OBR 341, 483 N.E.2d 1168. The Millers must meet all four requirements to prevail on their claim for malicious prosecution. *Robb* at 269, 662 N.E.2d 9.

{¶ 21} Central to our analysis is the "prior proceeding" requirement, stated in each element of the cause of action, namely, malicious institution of a *prior proceeding* and lack of probable cause for the *prior* lawsuit. Id. Moreover, the *prior* proceedings must be *terminated* in favor of the party asserting the malicious-prosecution claim. Id. Here, the Millers initiated their malicious-prosecution claim as a counterclaim and based it on the claims alleged in Wrinch's complaint and amended complaint. However, a malicious-prosecution action cannot be a counterclaim when the basis of the claim is the underlying action itself. *Anderson v. Eyman* (Dec. 14, 2000), 5th Dist. No. 00CA26, 2000 WL 1863125, at *3. This is because "[u]ntil the resolution of the [underlying] action, there is no way to determine whether [Wrinch] lacked probable cause to file [the underlying action] or whether termination of [the underlying action] will be in [the Millers'] favor." Id.

{¶ 22} Accordingly, in the absence of prior litigation initiated by Wrinch against the Millers and subsequently terminated in favor of the Millers, the Millers could not establish the necessary elements of a malicious-prosecution claim. The trial court erred in failing to grant the directed verdict on this claim. Wrinch's first assignment of error is sustained.

## DISCOVERY SANCTIONS

{¶ 23} Over the course of the litigation, the Millers filed four motions to compel concerning Wrinch's failure to adequately respond to interrogatories. Wrinch filed two motions to compel, one related to the failure of the Millers to attend a deposition and the other related to the Millers' failure to answer certain questions posed at the deposition. Needless to say, the discovery process did not go smoothly. We will address Wrinch's second, third, and fourth assignments of

error in tandem, as they concern alleged errors related to the award of discovery sanctions.

## The Millers' Second and Third Motions to Compel

{¶ 24} In her second assignment of error, Wrinch argues that the trial court incorrectly granted the second motion to compel and erroneously awarded the Millers attorney fees for discovery sanctions with respect to the Millers' second and third motions to compel.

{¶ 25} On August 23, 2006, the trial court denied the Millers' first motion for protective order and motion to compel. In its order, the trial court noted that the matter had been contentious from the beginning. The court further admonished the attorneys to remain professional and "not use this Court and the judicial process as a means for harassment or to further their own personal agendas."

{¶ 26} On September 18, 2006, counsel for the Millers forwarded correspondence to Wrinch's counsel, stating that although counsel had received the August 23, 2006 order, no additional information had been forwarded. Counsel indicated that if the information was not forthcoming by September 29, 2006, counsel would file a motion to compel. Wrinch's counsel replied to the correspondence on September 18, 2006, in which counsel claimed that Wrinch had provided every document in her possession that was relevant and responsive to the discovery. Counsel also indicated that there were two document requests that he did not understand and wanted clarification as to those items. As to responses to interrogatories, counsel stated that certain items were in no way relevant and that information would not be provided as to those items. Although the Millers' counsel indicated that he would file a motion to compel on September 29, 2006, if no further information was forthcoming, he nonetheless proceeded to file a second motion to compel on September 22, 2006. It does not appear that the Millers' counsel responded to Wrinch's counsel's request for clarification of some of the discovery requests.

{¶ 27} On October 12, 2006, Wrinch's counsel filed a memorandum in opposition to the second motion to compel. Counsel argued in part that the motion was improper because it was filed without a statement indicating the efforts made to resolve the dispute and the motion had been filed prior to the Millers' counsel's September 29 deadline for compliance as stated in his September 18 letter.

{¶ 28} Wrinch thereafter provided additional discovery. Notwithstanding the provision of additional discovery, on October 31, 2006, the Millers' counsel submitted a supplement to the second motion to compel, reiterating that although some additional discovery had been provided, Wrinch was not in full compliance with the outstanding discovery request. Attached to the supplement was a letter

dated October 31, 2006, to Wrinch's counsel identifying the specific items that remained outstanding, including interrogatories 4, 5, 7, 8, 9, and 16.

{¶ 29} On November 2, 2006, the trial court issued an order granting in part the Millers' second motion to compel and granting the request to show cause and for sanctions. The court did not impose sanctions, but held the award of sanctions in abeyance. In its order, the trial court ordered Wrinch to answer interrogatories 4, 5, 8, 9,[1] and 16. It further determined that Wrinch did not have to answer interrogatory 7, as that interrogatory was not relevant to the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

{¶ 30} Wrinch first contends that the trial court's decision granting the motion to compel was erroneous. Wrinch does not challenge the substantive ruling of the trial court with respect to the requirement that the above interrogatories be answered in full. Instead, Wrinch argues that the trial court erred in granting the motion to compel because the motion did not comply with Civ.R. 37(E), as it did not contain a statement detailing the efforts the Millers made to resolve the matter without intervention of the trial court.

{¶ 31} Initially, we note that "courts have broad discretion over discovery matters." *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, ¶ 18. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. "An abuse of discretion demonstrates 'perversity of will, passion, prejudice, partiality, or moral delinquency.' * * * When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court." *Spragling v. Oriana House, Inc.*, 9th Dist. No. 23501, 2007-Ohio-3245, 2007 WL 1828026, at ¶ 5, quoting *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 32} Civ.R. 37(E) provides that the motion to compel "shall be accompanied by a statement reciting the efforts made to resolve the matter in accordance with this section."

{¶ 33} In the second motion and supplement to the second motion, the Millers did not provide a separate statement that detailed the efforts made to resolve the matter. Instead, the Millers' motion to compel included a copy of the letter the Millers' attorney sent to Wrinch's attorney, which stated, "In an attempt to

---

1. With respect to this interrogatory, the court limited the production of medical information to the last five years as opposed to the past 20 years as requested by the Millers.

resolve these discovery issues amicably I offer the following explanation as to the necessity of the information you and your client refuse to provide." The Millers also attached a copy of Wrinch's responses to the interrogatories at issue and also attached copies of Wrinch's counsel's correspondence that categorically indicated that certain responses would not be forthcoming. Thus, the attachments provided documentation of the efforts made to resolve the dispute and also provided evidence that the parties were at an impasse with respect to certain items of discovery.

{¶ 34} In light of the above, we cannot say that the trial court abused its discretion and should have denied the Millers' second motion to compel. Although counsel did not prepare a separate statement, the record reflects that counsel attached documentation that made apparent those efforts employed to resolve the dispute and highlighted the fact that the parties were at an impasse regarding discovery.

{¶ 35} We have stated that "Civ.R. 37(E) was designed more for the benefit of the trial courts, not as an appellate obstacle." (Citations omitted.) *Spragling*, 2007-Ohio-3245, 2007 WL 1828026, at ¶ 7. See also *Unklesbay v. Fenwick*, 167 Ohio App.3d 408, 2006-Ohio-2630, 855 N.E.2d 516, at ¶ 10–11 (trial court did not err in granting motion to compel where party failed to attach statement outlining efforts to resolve discovery dispute and instead attached correspondence outlining discovery dispute). We determine this portion of Wrinch's argument to be without merit.

{¶ 36} The Millers proceeded to file a third motion to compel, which the trial court subsequently granted. In February 2007, the trial court held a hearing regarding the third motion to compel. It also considered a sanctions award relative to the second motion to compel that had been previously held in abeyance. The trial court awarded $1,200 in attorney fees as sanctions for both the second motion to compel and the third motion to compel. Although Wrinch does not argue that the trial court erred in granting the third motion to compel, Wrinch contends that the trial court erred in its award of attorney fees relative to both the second and third motion to compel.

{¶ 37} Civ.R. 37(A)(4) provides as follows:

If the motion [to compel] is granted, the court shall, after opportunity for hearing, require the party or deponent who opposed the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

Civ.R. 37(D) states that "[i]n lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court expressly finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."

{¶ 38} The Supreme Court of Ohio has concluded that "an award of attorney fees as a sanction for a discovery violation must actually be incurred by the party seeking the award." *Register,* 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, ¶ 24. Moreover, we have stated that "[w]hat is reasonable, for purposes of calculating attorney fees, is a question of fact[, and t]he trial court must have evidence before it probative of that issue in order to make the finding." (Citations omitted and alteration sic.) *Hall v. Nazario,* 9th Dist. No. 07CA009131, 2007-Ohio-6401, 2007 WL 4225423, at ¶ 17.

{¶ 39} In this case, at the hearing on the motion for sanctions the following exchange took place:

THE COURT: * * *. And I think [the Millers'] sanction request was for $600.

[MILLERS' COUNSEL]: I honestly don't remember, Judge.

THE COURT: That is what you put in your motion. * * * [W]hat hourly rate do you have?

[MILLERS' COUNSEL]: 200 an hour, your Honor.

In the Millers' second motion to compel, they requested $600 for attorney fees incurred in researching and filing the motion. The trial court stated in its March 7, 2007 order that "the Court awards attorney fees to [the Millers] in the amount of $600.00 in accordance with [the Millers'] Second Motion to Compel and $600.00 in accordance with [the Millers'] Third Motion to Compel, for a total amount of $1200.00."

{¶ 40} While the trial court clearly had the authority pursuant to Civ.R. 37(A)(4) and Civ.R. 37(D) to award reasonable attorney fees, it is equally apparent from the record that the evidence presented was not sufficient to determine what fees the Millers actually incurred or whether the fees were reasonable under the circumstances. Thus, while it was not error for the trial court to award attorney fees in this instance, the absence of evidence indicating the actual amount of the fees or that the awarded amount was reasonable requires us to reverse and remand so that the trial court can properly determine the appropriate award. Accordingly, we sustain Wrinch's second assignment of error as to the amount of the award of attorney fees relative to the Millers' second and third motion to compel.

**Attorney Fees for the Millers' Failure to Appear at Deposition**

{¶ 41} In Wrinch's third assignment of error, she argues that the trial court erred by failing to award the full measure of attorney fees when the Millers failed to appear at a deposition. We disagree.

{¶ 42} The trial court in its March 7, 2007 order stated, "[T]he Court awards attorney fees to [Wrinch] in the amount of $397.30. Said amount includes the $67.30 in court reporter expenses, one half hour ($110.00) for attendance at the depositions, and one hour ($220.00) for filing her Motion. The Court does not find that [Wrinch] is entitled to attorney fees in preparation of the depositions due to the fact that counsel's preparation time is necessary when he deposes the [Millers] in the future."

{¶ 43} At the hearing, the following testimony took place:

THE COURT: And your hourly rate?

[WRINCH'S COUNSEL]: $220, your Honor. We've asked for $1100 for our Motion to Compel and the aborted deposition. Well, $67.30 for the court reporter, which we attached to our memorandum.

THE COURT: Do you have your fees broken down on time spent or you're just submitting to the Court that you spent how many hours?

[WRINCH'S COUNSEL]: Five hours preparing for the deposition, which couldn't take place, time in having the court reporter show up and then time having to make a Motion to Compel. I believe that would be * * * to my records that was approximately five hours.

Further, in Wrinch's motion to compel, she requested six hours' worth of attorney fees, totaling $1,320, and court-reporter expenses. Thus, it appears that aside from the five hours of preparation time, Wrinch was seeking an hour's worth of fees for the combined acts of attending the deposition and producing the motion to compel.

{¶ 44} We determine that the trial court's award was in accordance with Civ.R. 37(D). Civ.R. 37(D) only permits the award of fees "caused by the failure," in this case, to attend a deposition. Thus, if the trial court were to award attorney fees to Wrinch for the time spent by Wrinch's counsel in preparing for the deposition, the trial court would have been disregarding the provisions of Civ.R. 37(D). While the exchange detailed above is not ideal for determining the reasonableness of a fee, it at least documents the time spent and the expenses incurred. In light of Wrinch's and Wrinch's counsel's requested fees, and the fact that the expenses incurred in preparing for the deposition were not caused by the Millers' failure to attend it, we cannot determine that the trial court's failure to award the entire amount requested by Wrinch's counsel was unreasonable or arbitrary. We therefore overrule Wrinch's third assignment of error.

**Sanctions for Failure to Answer Questions at the Millers' Deposition**

{¶ 45} In Wrinch's fourth assignment of error, she argues that the trial court erred in failing to award her attorney fees as a sanction for the Millers' failure to answer all the questions at a deposition. However, Wrinch has cited no legal authority in support of this assignment of error. It is Wrinch's responsibility to ensure that her argument "is supported by citations to legal authority and facts in the record." *State v. Taylor* (Feb. 9, 1999), 9th Dist. No. 2783–M, 1999 WL 61619, *3; see also App.R. 16(A)(7); Loc.R. 7(B)(7). "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Catanzarite v. Boswell,* 9th Dist. No. 24184, 2009-Ohio-1211, 2009 WL 692381, at ¶ 16, quoting *Kremer v. Cox* (1996), 114 Ohio App.3d 41, 60, 682 N.E.2d 1006. Thus, as Wrinch has failed to develop this argument, we will not address it.

## R.C. 2323.51 SANCTIONS

{¶ 46} In the final two assignments of error, Williams, as a separate appellant, assigns error with respect to the trial court's finding of frivolous conduct pursuant to R.C. 2323.51 and its imposition of sanctions against him for frivolous conduct.

{¶ 47} In the fifth assignment of error, Williams argues that the award of attorney fees was improper because the jury did not decide to award fees or punitive damages and, under the "American Rule," the defeated party does not pay the prevailing party's attorney fees. Thus, to the extent that the award of fees was predicated on the jury's verdict, it was erroneous. Williams also argues that the trial court did not comply with the standards set forth in R.C. 2323.51. Although Williams suggests that the trial court may have awarded attorney fees based upon the jury verdict, his suggestion is contrary to the record. The Millers' motion and the trial court's subsequent ruling solely relate to an award of attorney fees as a sanction for frivolous conduct as provided in R.C. 2323.51. Williams concedes in his appellate brief that this would be the only appropriate basis on which to award attorney fees and costs. Accordingly, we shall confine our analysis to whether the trial court's decision to award fees pursuant to R.C. 2323.51 was warranted, and if so, whether the amount of the award of attorney fees was proper.

{¶ 48} R.C. 2323.51(B)(1) permits a party to litigation to seek recovery of attorney fees incurred due to the frivolous conduct of the opposing party. "Conduct" refers to

[t]he filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in

a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action. R.C. 2323.51(A)(1)(a). Further, the statute defines frivolous conduct as any of the following:

(i) [conduct that] obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, * * *.

* * *

(iii) * * * allegations or other factual contentions that have no evidentiary support or, * * *, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv) * * * denials or factual contentions that are not warranted by the evidence or, * * *, are not reasonably based on a lack of information or belief.

R.C. 2323.51(A)(2)(a). The trial court must conduct a hearing on the motion to determine whether the alleged conduct was frivolous, whether the moving party was adversely affected by the conduct, and the amount of the award to be made, if any. R.C. 2323.51(B)(2)(a).

{¶ 49} We have stated that the following two-step analysis applies to claims made pursuant to R.C. 2323.51: "(1) whether an action taken by the party to be sanctioned constitutes 'frivolous conduct,' and (2) what amount, if any, of reasonable attorney fees necessitated by the frivolous conduct is to be awarded to the aggrieved party." *Ceol v. Zion Indus., Inc.* (1992), 81 Ohio App.3d 286, 291, 610 N.E.2d 1076. "[T]he trial court's factual findings supporting a conclusion that frivolous conduct occurred will not be overturned if they are supported by competent, credible evidence." *Jefferson v. Creveling*, 9th Dist. No. 24206, 2009-Ohio-1214, 2009 WL 692208, at ¶ 12, quoting *S & S Computer Sys., Inc. v. Peng*, 9th Dist. No. 20889, 2002-Ohio-2905, 2002 WL 1375870, at ¶ 9. We review the award of attorney fees using an abuse-of-discretion standard. Id.

{¶ 50} In the case at bar, the trial court specifically found that Wrinch's conduct was frivolous pursuant to R.C. 2323.51(A)(2)(a)(iii), in that the factual contentions of Wrinch's claims lacked evidentiary support. First, the trial court found that Wrinch's claim for breach of contract based on the Millers' failure to make repairs to the rental property was unsubstantiated because the parties' contract provided that Wrinch would be responsible for repairs. Nonetheless, when the Millers did attempt to make requested repairs, Wrinch thwarted their efforts. Second, the trial court determined that Wrinch's claim for retaliation was baseless due to the timing of the evictions and Wrinch's complaint to the Akron Health Department. Finally, the trial court found Wrinch's claim for return of her security deposit frivolous in light of the terms of the parties'

contract, which stated that the deposit was nonrefundable. The trial court also noted that the Millers secured summary judgment on this individual claim.[2]

{¶ 51} Although the parties' contract states that Wrinch would be responsible for all repairs to the premises, the testimony adduced at trial demonstrated that Wrinch and at least Mr. Miller discussed and verbally modified this term. Both Wrinch and Mr. Miller testified that Wrinch was to be responsible for minor repairs and that the Millers would handle major repairs. Specifically, when Wrinch complained of a major repair, Mr. Miller sent his handyman to the house to inspect the problem. Mr. Miller stated that he had his handyman repair certain items in Wrinch's home, such as installing a new floor and some new plumbing in the bathroom, but did not seek reimbursement from Wrinch. Mr. Miller also stated at trial that as a landlord, he believed he was responsible for major repairs to the home, such as the roof, while Wrinch should be responsible for minor repairs. Clearly, the parties' course of conduct demonstrates that Wrinch was not responsible for all necessary repairs to the home during her tenancy. Thus, Wrinch provided evidentiary support for her claim of breach of contract relative to the Millers' failure to make repairs.

{¶ 52} Wrinch also complained that the Millers' breached the contract by failing to fulfill their duty to complete repairs in a timely fashion. Wrinch testified that she told the Millers of a leak in her bathroom in May 2005, but that the Millers did not address the issue until months later. The trial court determined that Wrinch denied the handyman, Calvin Brown, access to the home, thus delaying repairs. Although Brown testified at trial that there were a couple of occasions when Wrinch either was not at home to grant him access to fix the bathroom, or she left the home and locked up while he was at the store purchasing supplies, Brown was not able to recall the dates of those occasions, or when he was initially contacted by the Millers to make repairs to the bathroom. Accordingly, it is not possible to determine that Wrinch's actions alone delayed the bathroom project by months, and therefore Wrinch again provided evidentiary support for her claim at trial.

{¶ 53} In ruling that Wrinch's claim for retaliatory eviction was frivolous, the trial court focused on whether the evictions filed in July and September 2005 were filed in retaliation to Wrinch's complaint to the Akron Health Department in October 2005. However, Wrinch claimed that she believed that the actions filed in July and September were a result of her ongoing issue with repairs to the bathroom that were still not completed in July 2005 and because she informed the

---

2. The Millers moved for summary judgment on all of Wrinch's claims; however, the trial court found material disputes of fact with respect to the claims of breach of contract and retaliatory eviction.

Millers in June 2005 that she no longer wished to buy the home. Wrinch also argued that after she contacted the Akron Health Department in October 2005 concerning a portion of the ceiling in her daughter's bedroom collapsing, the Millers sent her a 30–day notice to vacate the premises. Thus, Wrinch provided factual support at trial for her claim.

{¶ 54} We, do however, agree that Wrinch's claim for return of her security deposit was not supported by the facts. The contract clearly states that $1,000 was tendered as consideration for the option to purchase the home. The contract also states that the amount is nonrefundable. The record does not contain evidence that this provision was altered in any manner that would lead Wrinch to believe that the $1,000 was actually a security deposit that would be returned.

{¶ 55} In light of the foregoing, we hold that the trial court's determination that Wrinch's claims for breach of contract and retaliatory eviction were frivolous and not substantiated by facts is not supported by the evidence. We note that these claims survived the Millers' motion for summary judgment. Although not determinative, the fact that summary judgment was denied demonstrates that Wrinch provided at least some factual basis to support the claims. See, e.g., *Baker v. Beachwood Villas Condominium Owners Assn.*, 6th Dist. No. E–03–011, 2004-Ohio-682, 2004 WL 290984, at ¶ 23 (stating that the trial court's denial of a directed verdict on appellant's claim was arguably a determination that the claim was not frivolous). While evidence may have been offered at trial to contradict Wrinch's claims, leaving the jury to weigh the evidence and determine the credibility of the witnesses, neither the presence of conflicting evidence nor an unsuccessful outcome on the claims compel the conclusion that Wrinch's claims were frivolous. However, the evidence supports the trial court's finding that the security-deposit claim was frivolous. The fifth assignment of error is therefore sustained in part and overruled in part.

{¶ 56} In the sixth assignment of error, Williams contends that the evidence presented by the Millers did not justify the amount of the sanctions awarded. Williams argues that the trial court's award of fees included amounts expended on claims and motions not finally determined in favor of the Millers and that the trial court did not utilize the appropriate factors to determine if the amount of the award was reasonable.

{¶ 57} The Millers sought an award of attorney fees against Williams as Wrinch's counsel, not Wrinch personally. The Millers' counsel attached to the motion for attorney fees pursuant to R.C. 2323.51 an accounting of the amount of time spent on various tasks and the corresponding charge to the client. The accounting listed all charges for the entire litigation, through trial. At the

hearing on the motion for fees, counsel offered the testimony of a fellow attorney in the community as to the reasonableness of the fee charged.

{¶ 58} The trial court reduced the request by a slight amount that it determined represented charges not related to the instant matter. The trial court then added an amount for fees for posttrial motions, an amount for fees for responding to an appeal, and an amount for litigation costs. Because the trial court previously determined that all of Wrinch's claims were frivolous, it determined that the Millers were entitled to recover the total amount of attorney fees and costs incurred, $52,422. The trial court awarded the Millers half of the total sought, reasoning that both Wrinch and her counsel were responsible for the frivolous conduct, but recognizing that the Millers sought judgment only against Wrinch's counsel. Thus, Williams was ordered to pay $26,211 toward the Millers' litigation expenses.

{¶ 59} We review the amount of attorney fees awarded pursuant to R.C. 2323.51 under an abuse-of-discretion standard. *S & S Computer Sys., Inc.*, 2002-Ohio-2905, 2002 WL 1375870, at ¶ 9. Abuse of discretion implies that the trial court's judgment was "unreasonable, arbitrary, or unconscionable." *Blakemore*, 5 Ohio St.3d at 219, 5 OBR 481, 450 N.E.2d 1140. The party seeking fees bears the burden to provide the court with evidence as to the "costs and expenses that were incurred * * * and * * * necessitated by the frivolous conduct * * *." R.C. 2323.51(B)(5)(b). See also *Jefferson*, 2009-Ohio-1214, 2009 WL 692208, at ¶ 33. The trial court must look to the factors outlined in the Ohio Rules of Professional Conduct to determine whether the fees requested are reasonable. *Jefferson* at ¶ 33. The factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; (8) whether the fee is fixed or contingent.

Prof.Cond.R. 1.5(a).

{¶ 60} In the instant matter, the record is devoid of evidence that the trial court considered the above-enumerated factors when deciding the reason-

ableness of the fees requested.[3] Also, the accounting of fees and expenses submitted by counsel for the Millers includes generalized notations of work performed and does not specifically itemize the time attributable to Wrinch's alleged frivolous conduct. Greater detail was not provided in either the motion for sanctions or at the hearing on the motion. "[T]he party seeking R.C. 2323.51 attorney fees must affirmatively demonstrate that he or she incurred additional attorney fees as a direct, identifiable result of defending the frivolous conduct in particular." *Wiltberger v. Davis* (1996), 110 Ohio App.3d 46, 54, 673 N.E.2d 628.

{¶ 61} In light of our determinations that the Millers' malicious-prosecution claim was premature and that Wrinch's claims for breach of contract and retaliatory eviction were not frivolous, we determine that the award of attorney fees must be reduced accordingly. The sixth assignment of error is sustained. Accordingly, we remand this matter to the trial court to determine the reasonableness of the fees requested pursuant to Prof.Cond.R. 1.5(a) and to determine the appropriate award of attorney fees that were a direct, identifiable result of defending Wrinch's frivolous claim for return of security deposit.

## III

{¶ 62} In light of the above, we sustain the first, second, and sixth assignments of error, overrule the third and fourth assignments of error, and overrule in part and sustain in part the fifth assignment of error. The instant matter is remanded for proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

MOORE, P.J., and DICKINSON, J., concur.

---

**3.** Although we have overruled the award in this opinion, we note that the trial court did not consider the discovery sanctions previously awarded to the Millers when determining the award for R.C. 2323.51 sanctions. On remand, the trial court should eliminate any amount awarded for discovery violations from the award for frivolous conduct.