[Cite as *Southard Supply, Inc. v. Anthem Contrs., Inc.*, 2017-Ohio-7298.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Southard Supply, Inc., | : | |
| Plaintiff-Appellee/ Cross-Appellant, | : | No. 16AP-545 |
| | : | (C.P.C. No. 14CV-4769) |
| v. | | |
| | : | (REGULAR CALENDAR) |
| Anthem Contractors, Inc. et al., | | |
| | : | |
| Defendant-Appellant/ Cross-Appellee. | : | |

D E C I S I O N

Rendered on August 22, 2017

**On brief:** *Scherner & Sybert LLC*, and *Dave Lackey*, for plaintiff-appellee. **Argued:** *Dave Lackey*.

**On brief:** *Timothy S. Rankin* and *Ilya L. Polyakov*, for defendant-appellant. **Argued:** *Timothy S. Rankin*.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Anthem Contractors, Inc. ("Anthem"), appeals a judgment of the Franklin County Court of Common Pleas that sanctioned plaintiff-appellee, Southard Supply, Inc. ("Southard"), for its frivolous conduct under R.C. 2323.51. Southard has filed a cross-appeal from the same judgment. For the following reasons, we affirm the trial court's judgment.

{¶ 2} Southard sells plumbing, heating, and industrial supplies. Anthem is a construction contractor who has purchased materials from Southard on account.

{¶ 3}   In early 2012, Anthem began renovating the fitness center at the federal courthouse in Columbus, Ohio.  Anthony McCleery, the president of Anthem, hired Jerry Ball to perform plumbing work during the courthouse project.  In April 2012, McCleery discovered that Ball had used Anthem's credit account with Southard to purchase materials for himself.  Anthem refused to pay for the materials Ball purchased because it never authorized Ball to order on credit.

{¶ 4}   On May 2, 2014, Southard filed suit against Anthem, asserting claims for breach of contract and unjust enrichment.[1]   In its complaint, Southard alleged that Anthem had authorized Ball to purchase materials using Anthem's credit account.  Southard sought to recover $16,531.93 for the materials that Ball had purchased on credit.

{¶ 5}   The parties then conducted discovery, during which Anthem served interrogatories on Southard.  In response to those interrogatories, Southard stated that Anthem had given Southard verbal approval for Ball to order materials on credit.  (Pl.'s Resp. to Def.'s First Set of Interrogs. and Reqs. for Produc. of Docs. at No. 22.)

{¶ 6}   After the completion of discovery, Southard voluntarily dismissed its complaint.  Anthem then moved for sanctions against Southard and its attorney under R.C. 2323.51.  In its motion, Anthem argued that the deposition testimony of Southard's employees contradicted the factual contention, made in the complaint and in interrogatory responses, that Anthem had authorized Ball to order materials using Anthem's credit.

{¶ 7}   At a hearing on Anthem's sanctions motion, Anthem introduced the contract governing Anthem's credit account with Southard.  The contract consisted of Anthem's application for credit, which Southard had approved.  The contract included an "Approved Buyers List" and provided that "[o]nly the names listed below will be approved to purchase" using the credit account.  (Def.'s Ex. 2.)  The list contained only two names, Anthony McCleery and Theresa Smith, and stated, "all others call for approval."  *Id.*

{¶ 8}   McCleery testified at the sanctions hearing that Anthem had never authorized Ball to order materials on Anthem's credit account with Southard.  Michael Lawrence, Southard's credit manager, conceded that Anthem had not provided Southard

---

[1] The complaint also named Ball as a defendant and sought recovery against him under R.C. 2307.60, which creates a civil cause of action for damages resulting from a criminal act.  When Ball failed to answer the complaint, Southard moved for and was granted a default judgment against him.

with either written or verbal approval for Ball to purchase materials using Anthem's credit. However, Lawrence maintained that Anthem had authorized Ball to purchase on Anthem's credit because: (1) Ball had previously accompanied McCleery to Southard's office, where McCleery had placed orders and Ball had assisted McCleery by telling him what supplies were needed to complete the work on the courthouse project, and (2) McCleery had allowed Ball to pick up ordered materials and sign invoices to acknowledge the delivery of the materials, and Anthem had paid invoices that Ball had signed.

{¶ 9} In a judgment issued June 23, 2016, the trial court found that Southard had engaged in frivolous conduct under R.C. 2323.51(A)(2)(a)(iii), which defines "frivolous conduct" as "conduct consist[ing] of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."[2] The trial court determined that Southard's allegation that Anthem had authorized Ball to purchase materials on Anthem's account had no merit from the outset. Additionally, the trial court found that, if Southard had investigated the matter more thoroughly, it would have realized that its own actions had created the debt that it sought to collect from Anthem. The trial court then concluded that sanctions against Southard in the amount of $5,000 were reasonable, and it ordered Southard to pay that amount to Anthem.

{¶ 10} Anthem now appeals the trial court's June 23, 2016 judgment, and it assigns the following errors:

> [1.] The Trial Court Failed to Find that Southard's Claims were not Warranted Under Existing Law and that Southard and Lackey had an Obligation not to Pursue such Frivolous Conduct.
>
> [2.] The Trial Court Failed to Find that Lackey was Jointly and Severally Liable for Southard's Frivolous Conduct Involving Allegations and Factual Contentions which had no Evidentiary Support from the Outset, or at any Time Prior to Dismissal.

---

[2] Initially, the trial court referred the motion for sanctions to a magistrate for a hearing and decision. The magistrate conducted the sanctions hearing but, subsequently, became unable to render a decision. To resolve this problem, the parties consented to the trial judge determining the motion on the then-existing record.

[3.] The Trial Court Abused its Discretion by Failing to Award all of Appellant's Legal Fees, or in the Alternative, the Trial Court Misapplied R.C. 2323.51(2)(A) [sic] to Require Malicious Conduct, which is Inherently Arbitrary and Unreasonable *Per Se*.

{¶ 11} Southard cross appeals, and it assigns the following errors:

1. The trial court erred when it granted Anthem Contractor, Inc.'s ("Anthem") motion for sanctions against the Plaintiff-Cross-Appellant, Southard.

2. The trial court erred in allowing transcripts from depositions admitted into evidence in the sanctions hearing.

{¶ 12} We will begin our review with Southard's cross-appeal. By its first assignment of error, Southard argues that the trial court erred in finding that it engaged in frivolous conduct. We disagree.

{¶ 13} Pursuant to R.C. 2323.51(B)(1), a court may award court costs, reasonable attorney fees, and other reasonable expenses to any party to a civil action who is adversely affected by frivolous conduct. Prior to making such an award, the court must hold a hearing to determine: (1) whether the conduct at issue was frivolous, (2) if the conduct was frivolous, whether any party was adversely affected by it, and (3) the amount of the award, if any. *Bennett v. Martin*, 10th Dist. No. 13AP-99, 2013-Ohio-5445, ¶ 17. "Conduct" includes "[t]he filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action * * * or the taking of any other action in connection with a civil action." R.C. 2323.51(A)(1). "Frivolous conduct" means the conduct of a party or the party's attorney that satisfies any of the following:

(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

R.C. 2323.51(A)(2)(a)(i) through (iv).

{¶ 14} In the case at bar, the trial court found Southard's conduct frivolous under R.C. 2323.51(A)(2)(a)(iii). Whether conduct is frivolous under R.C. 2323.51(A)(2)(a)(iii) presents a factual question; namely, whether evidence supports a party's allegations or factual contentions. *Carasalina LLC v. Bennett*, 10th Dist. No. 14AP-74, 2014-Ohio-5665, ¶ 32. An allegation or factual contention needs only minimal evidentiary support in order for a party or its attorney to avoid a frivolous conduct finding under R.C. 2323.51(A)(2)(a)(iii). *Carasalina* at ¶ 36.

{¶ 15} Because a finding of frivolous conduct under R.C. 2323.51(A)(2)(a)(iii) results from a factual analysis, appellate courts afford such a finding a degree of deference. *Carasalina* at ¶ 37. Appellate courts will not reverse a determination that conduct is frivolous under R.C. 2323.51(A)(2)(a)(iii) unless the record lacks competent, credible evidence to support the trial court's factual findings. *Carasalina* at ¶ 37; *Groves v. Groves*, 10th Dist. No. 09AP-1107, 2010-Ohio-4515, ¶ 18, *overruled in part on other grounds*, *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434.

{¶ 16} Here, we must determine whether Southard had evidentiary support for its factual contention that Anthem had authorized Ball to purchase materials using Anthem's credit account with Southard. Conceivably, Ball could have acquired the ability to purchase materials using Anthem's credit through either express or apparent authorization. Thus, we will analyze whether the record contains evidence of either type of authorization.

{¶ 17} Express authority is that authority which a principal directly grants or confers upon an agent in express terms. *Master Consol. Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570, 574 (1991). Here, the "Approved Buyers List" in the parties' contract explicitly limited which of Anthem's agents had express authority to purchase on credit.

For Ball to obtain that authority, Southard had to acquire Anthem's approval. Lawrence, Southard's credit manager, admitted that Anthem never told Southard, either in writing or verbally, that Ball had the authority to utilize Anthem's credit account.

{¶ 18} To counteract Lawrence's admission, Southard points to a telephone log memorializing a conversation between McCleery (Anthem's president) and a Southard employee wherein McCleery told the Southard employee to take Ball "off of the approved list of buyers." (Pl.'s Ex. I.) Viewed in isolation, this conversation might suggest that Ball was on the "Approved Buyers List." That list, however, never contained Ball's name, and Southard did not receive written or verbal approval to add Ball to that list. The evidence, therefore, does not establish that Ball possessed the express authority necessary to purchase materials on Anthem's account.

{¶ 19} Apparent authority arises when a principal has by its words or actions caused a third party to reasonably believe that the agent had the requisite authority to bind the principal. *Am. Outdoor Advertising Co. v. P&S Hotel Group, Ltd.*, 10th Dist. No. 09AP-221, 2009-Ohio-4662, ¶ 37. For such authority to exist (1) the principal must hold the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permit the agent to act as having such authority, and (2) the person dealing with the agent must know of the facts and, acting in good faith, have reason to believe that the agent possessed the necessary authority. *Master Consol. Corp.* at 576. Moreover,

> "[t]he apparent power of an agent is to be determined by the act of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of the authority and not where the agent's own conduct has created the apparent authority."

*Id.* at 576-77, quoting *Logsdon v. ABCO Constr. Co.*, 103 Ohio App. 233, 242 (2d.Dist.1956).

{¶ 20} According to Lawrence, Southard assumed that Ball had the necessary authority to purchase materials on Anthem's credit because Ball had previously visited Southard's offices with McCleery and assisted McCleery in ordering materials for the courthouse project. We do not agree that McCleery's and Ball's behavior created the

apparent authority to allow Ball to subsequently buy on Anthem's credit. No apparent authority could arise from this behavior because Southard and Anthem had a contract that explicitly limited who could order materials using Anthem's credit. This contract restricted the approved buyers to McCleery and Smith, and required Southard to obtain telephone approval before allowing anyone else to charge purchases on Anthem's account. Given the terms of this agreement, Southard could not reasonably believe that McCleery's acceptance of Ball's assistance in ordering materials authorized Ball to subsequently purchase materials with Anthem's credit. In short, by conditioning the use of Anthem's credit on verbal approval, the contract precluded the creation of authority through anything less than express authorization.

{¶ 21} Lawrence also contended that Anthem authorized Ball to purchase materials on account because it permitted him to accept delivery of ordered items and sign the invoices to acknowledge the delivery. While the evidence demonstrates that Anthem permitted Ball to accept and acknowledge deliveries, that conduct is separate and distinct from ordering materials on credit. Consequently, by permitting Ball to accept and acknowledge deliveries, Anthem did not hold Ball " 'out to the public as possessing sufficient authority to embrace the particular act in question.' " *Master Consol. Corp.* at 576, quoting *Logsdon* at 241-42. Apparent authority, therefore, did not arise from Ball's acceptance and acknowledgement of deliveries.

{¶ 22} In addition to relying on Lawrence's testimony, Southard also points to further evidence that it argues supports its contention that Anthem authorized Ball to purchase materials on account. First, Southard directs us to a written statement, allegedly prepared by McCleery, that provided, "Ball [ ] ordered 3/4" and 1" copper pipe and fittings to complete the rest of the punchout list" for the courthouse project. (Pl.'s Ex. G.) Initially, we note that when confronted with this statement, McCleery explained that Ball did not order items directly from Southard, but instead, gave McCleery a written list of items he needed and McCleery then ordered those items from Southard. However, even if the statement is evidence that Ball directly ordered the copper pipe and fittings from Southard, it does not demonstrate apparent authority. Apparent authority arises due to the acts of the principal, not the agent. *Master Consol. Corp.* at 576-77. Thus, evidence

that Ball placed an order with Southard, without more, falls short of proving apparent authority.

{¶ 23} Next, Southard asserts that McCleery conceded that Anthem paid for certain items that Ball purchased on Anthem's credit.  In fact, the record contains no evidence that Anthem paid for any of the materials Ball purchased.  At best, the evidence establishes that McCleery did not dispute charges for a handful of items contained on three of the approximately 30 invoices that Ball's purchases had generated.  However, McCleery only communicated Anthem's acceptance of responsibility for some charges *after* McCleery had demanded that Southard cease allowing Ball to purchase on Anthem's credit and, consequently, Ball's ordering stopped.  Anthem's after-the-fact acceptance of responsibility is not evidence that, at the time Ball was ordering materials, Anthem either held Ball out to Southard as having the authority to purchase on credit or knowingly permitted Ball to purchase items on credit.  Thus, Anthem's actions did not endow Ball with any apparent authority.

{¶ 24} Southard also advances two ratification arguments:  (1) Anthem's failure to dispute certain charges amounted to ratification of all Ball's purchases, and (2) Anthem ratified Ball's purchases because it delayed informing Southard that the purchases were unauthorized.  A principal ratifies the unauthorized action of an agent if the principal, with full knowledge of the facts of the transaction, manifests its intention to approve the agent's earlier, unauthorized act.  *Bobb Chevrolet v. Calhoun*, 10th Dist. No. 03AP-816, 2004-Ohio-1006, ¶ 15.  We need not resolve whether Anthem ratified Ball's actions.  Ratification comes into play only if an agent acts *beyond* the scope of his authority.  *Penn Traffic Co. v. AIU Ins. Co.*, 99 Ohio St.3d 227, 2003-Ohio-3373, ¶ 16.  We are only concerned with whether evidence supports Southard's contention that Ball acted *within* the scope of his authority when he purchased materials using Anthem's credit account.  Ratification, therefore, is irrelevant.

{¶ 25} Having addressed all the evidence bearing on Ball's authority, we conclude that none of it establishes that Anthem authorized Ball to purchase on Anthem's credit account.  The trial court, therefore, did not err in concluding that Southard engaged in frivolous conduct under R.C. 2323.51(A)(2)(a)(iii).  Accordingly, we overrule Southard's first assignment of error.

{¶ 26} By Southard's second assignment of error, it argues that the trial court erred in admitting into evidence the depositions of four Southard employees. While we find that the alleged error occurred, we conclude that the error does not justify reversal of the trial court's judgment because it did not materially prejudice Southard.

{¶ 27} The decision to admit or exclude evidence rests within the broad discretion of the trial court. *Banford v. Aldrich Chem. Co.*, 126 Ohio St.3d 210, 2010-Ohio-2470, ¶ 38; *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, ¶ 20. Appellate courts will uphold evidentiary rulings absent an abuse of discretion. *Banford* at ¶ 38; *Beard* at ¶ 20. Moreover, even in the event of an abuse of discretion, an appellate court will affirm the trial court's evidentiary ruling unless the abuse materially prejudiced a party. *Banford* at ¶ 38; *Beard* at ¶ 20.

{¶ 28} Generally, deposition testimony is inadmissible at trial or a hearing because it constitutes hearsay. *Whitmer v. Zochowski*, 10th Dist. No. 15AP-52, 2016-Ohio-4764, ¶ 69. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). In this case, the trial court determined that the deposition testimony was not hearsay because it was offered for a purpose other than proving the truth of the matters asserted. Specifically, the trial court admitted the depositions for the limited purpose of showing what Southard's attorney knew about the state of the evidence when he signed and filed documents containing the factual contentions at issue.

{¶ 29} An attorney's knowledge, however, is not relevant to whether frivolous conduct has occurred. R.C. 2323.51 employs an objective standard in determining whether a party or its attorney has engaged in frivolous conduct. *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, ¶ 21. Thus, a court does not look to what the party or its attorney knew or believed in deciding whether the conduct at issue is frivolous. *Judd v. Meszaros*, 10th Dist. No. 10AP-1189, 2011-Ohio-4983, ¶ 22; *Stafford v. Columbus Bonding Ctr.*, 177 Ohio App.3d 799, 2008-Ohio-3948, ¶ 8 (10th Dist.). The plain language of R.C. 2323.51(A)(2)(a)(iii) requires a court to consider whether evidence existed to support the allegations or factual contentions in question, not whether the party or attorney knew of that evidence.

{¶ 30} Given the objective nature of an inquiry into whether frivolous conduct has occurred, the trial court erred in admitting the deposition testimony for the purpose of divining the extent of Southard's attorney's knowledge. Anthem sought to admit that testimony to demonstrate that the evidence contradicted, rather than supported, the contention that Ball had authority to order materials using Anthem's credit account. The depositions, therefore, were offered for the truth of the matters asserted therein and, thus, constituted hearsay.

{¶ 31} Nevertheless, despite the error in admitting the depositions into evidence, our review is not over. As we stated above, error in the admission of evidence only warrants reversal if the error materially prejudiced the appealing party. *Banford*, 126 Ohio St.3d 210, 2010-Ohio-2470, at ¶ 38; *Beard*, 106 Ohio St.3d 237, 2005-Ohio-4787, at ¶ 20. An appealing party does not suffer material prejudice when the erroneously admitted evidence is cumulative to other evidence in the record. *Whitmer*, 10th Dist. No. 15AP-52, 2016-Ohio-4764, at ¶ 76.

{¶ 32} Here, on the question of Bell's authority, the testimony adduced in the depositions mirrored Lawrence's testimony at the hearing. The deponents offered the same reasons as Lawrence for believing that Ball possessed the authority to order on credit. Also, like Lawrence, the deponents acknowledged that Anthem had not provided Southard with verbal or written authority to allow Ball to purchase materials using Anthem's credit. Accordingly, we find that admission of the depositions did not materially prejudice Southard, and we overrule Southard's second assignment of error.

{¶ 33} We next turn to Anthem's appeal. By its first assignment of error, Anthem argues that the trial court erred in not finding that Southard and its attorney had engaged in the type of frivolous conduct defined in R.C. 2323.51(A)(2)(a)(ii). A trial court may award sanctions under R.C. 2323.51 if it determines that the conduct at issue falls within any of the four definitions of "frivolous conduct" found in R.C. 2323.51(A)(2)(a). Here, the trial court concluded that the conduct at issue was frivolous under R.C. 2323.51(A)(2)(a)(iii), and we have found no error in that conclusion. Because a party only needs a finding of frivolousness under one of the four definitions for an award of attorney fees under R.C. 2323.51, our ruling renders moot any error in the trial court's failure to

find frivolousness under another definition. Accordingly, we find Anthem's first assignment of error moot.

{¶ 34} By Anthem's second assignment of error, it argues that the trial court erred in not finding Southard's attorney jointly and severally liable for payment of the attorney fees awarded. We disagree.

{¶ 35} R.C. 2323.51(B)(4) provides that an award of attorney fees "may be made against a party, the party's counsel of record, or both." Thus, a trial court may impose sanctions upon both a party and its attorney, jointly and severally, if the conduct so warrants. *Sain v. Roo*, 10th Dist. No. 01AP-360 (Oct. 23, 2001).

{¶ 36} By allowing the imposition of sanctions against the party, attorney, or both, the statute " 'provides a mechanism for the court to place blame directly where fault lies.' " *Rindfleisch v. AFT, Inc.*, 8th Dist. No. 84551, 2005-Ohio-191, ¶ 19, quoting *Estep v. Kasparian*, 79 Ohio App.3d 313, 317 (10th Dist.1992); *accord Ron Scheiderer Assocs. v. London*, 81 Ohio St.3d 94, 97 (1998) (by authorizing an award against a party, its counsel, or both, "[t]he General Assembly gave courts the discretion to hold those engaging in frivolous conduct responsible for their actions"); *Sain* ("The objective of the statute is to impose sanctions on the person actually responsible for the frivolous conduct."). An appellate court will not reverse the trial court's allocation of the responsibility for the payment of attorney fees absent an abuse of discretion. *Blackburn v. Lauder*, 4th Dist. No. 96CA5 (Nov. 12, 1996).

{¶ 37} Here, although Anthem asked the trial court to hold Southard and its attorney jointly and severally liable for the attorney fees awarded, the trial court only sanctioned Southard. Anthem contends that this ruling constituted error because Southard and its attorney are equally responsible for the frivolous conduct at issue in this case. We are not persuaded that imposing sanctions on Southard, and not its attorney, amounts to an abuse of discretion.

{¶ 38} In some cases, it is possible to portion responsibility for the frivolous conduct between a party and its attorney. Here, however, the record contains no evidence regarding whether Southard or its attorney was at fault for the unsupported contention that Ball was authorized to purchase materials using Anthem's credit account. Conceivably, the blame could lie with Southard, if, for example, its employees supplied

Southard's attorney with erroneous information, or instead, the blame could lie with Southard's attorney, if, for example, the attorney failed to fully investigate the matter. Without any evidence to base the apportionment of fault, we must conclude that the trial court did not abuse its discretion in ordering Southard, alone, to pay the attorney fees award.

{¶ 39} Anthem also argues that Southard's attorney should be jointly and severally liable because the attorney obtained an inaccurate affidavit from a third party and provided that affidavit to Anthem's attorney. The record contains neither the affidavit nor enough evidence for us to adjudge Anthem's allegation that the affidavit was inaccurate. Moreover, the affidavit is unrelated to the trial court's finding of frivolous conduct. Accordingly, we cannot find that an abuse of discretion occurred here, and we overrule Anthem's second assignment of error.

{¶ 40} By its third assignment of error, Anthem argues that the trial court erred in awarding it only $5,000 in attorney fees. We disagree.

{¶ 41} At the sanctions hearing, Anthem's attorney presented evidence that Anthem had incurred over $18,000 in attorney fees to defend this case. Anthem's attorney provided the court with the invoices his law firm had issued to Anthem, which showed that the law firm billed Anthem on an hourly-rate basis. Anthem's attorney also testified that all the fees charged were reasonable and necessary.

{¶ 42} In its decision, the trial court acknowledged that Anthem sought approximately $18,000 in attorney fees. The trial court, nevertheless, only awarded Anthem $5,000 in attorney fees. The trial court set the attorney fee award at $5,000 because it concluded that Southard had not brought its action in order to harass or maliciously damage Anthem.

{¶ 43} A trial court exercises discretion in deciding to assess attorney fees as a sanction for frivolous conduct. *Carasalina LLC*, 10th Dist. No. 14AP-74, 2014-Ohio-5665, at ¶ 48. Moreover, a trial court has discretion to determine the amount of attorney fees to award. *Bear v. Troyer*, 5th Dist. No. 15 CA 17, 2016-Ohio-3363, ¶ 67; *Wrinch v. Miller*, 183 Ohio App.3d 445, 2009-Ohio-3862, ¶ 59 (9th Dist.).

{¶ 44} R.C. 2323.51(B)(3) addresses the amount of attorney fees a trial court may award to a party adversely affected by frivolous conduct. According to that division,

The amount of an award made pursuant to division (B)(1) of this section that represents attorney's fees shall not exceed, and may be equal to or less than, whichever of the following is applicable:

(a) If the party is being represented on a contingent fee basis, an amount that corresponds to reasonable fees that would have been charged for legal services had the party been represented on an hourly fee basis or another basis other than a contingent fee basis;

(b) In all situations other than that described in division (B)(3)(a) of this section, the attorney's fees that were reasonably incurred by a party.

{¶ 45} Pursuant to R.C. 2323.51(B)(3), to assess reasonable attorney fees in a non-contingent fee case, a trial court must first determine the amount of attorney fees that the adversely affected party "reasonably incurred." To determine that amount, the trial court must use the lodestar method of calculating fees set forth in *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143 (1991). *State ex rel. Bell v. Madison Cty. Bd. of Commrs.*, 139 Ohio St.3d 106, 2014-Ohio-1564, ¶ 21 (stating that *Bittner* supplied "the correct law" for determining attorney fees under R.C. 2323.51). However, the trial court need not award the amount of attorney fees it arrives at after applying the lodestar method. R.C. 2323.51(B)(3) allows the trial court to award an amount "equal to or less than" the fees "reasonably incurred." Thus, a trial court has the discretion to award reasonable attorney fees that fall short of the total amount of fees reasonably incurred. *See Scott v. Namath*, 10th Dist. No. 16AP-64, 2016-Ohio-5532, ¶ 30-32 (holding that R.C. 2323.51 affords trial courts the discretion to reduce awards of reasonable attorney fees all the way down to zero). In the case at bar, therefore, the trial court did not abuse its discretion in refusing to award Anthem all the attorney fees that it reasonably incurred.

{¶ 46} Anthem also argues that the trial court erred in relying on the lack of harassment or malice as the basis on which to award less attorney fees than the amount reasonably incurred. We find this argument unavailing. R.C. 2323.51 does not delineate factors or considerations that a trial court may, or must, use when deciding whether to award attorney fees in an amount less than the amount reasonably incurred. Thus, nothing precludes a trial court from considering the absence of harassment and malicious

intent. Indeed, because the lack of harassing or malicious conduct mitigates a party's culpability for engaging in frivolous conduct under R.C. 2323.51(A)(2)(a)(iii), it serves as a reasonable basis to lessen a party's sanction. We, consequently, conclude that the trial court did not abuse its discretion in using that consideration as a reason to lower the amount of attorney fees due to Anthem.

{¶ 47} In sum, we reject both of the arguments that Anthem asserts under its third assignment of error. Accordingly, we overrule that assignment of error.

{¶ 48} For the foregoing reasons, we find Anthem's first assignment of error moot, and we overrule Anthem's second and third assignments of error. Additionally, we overrule Southard's two assignments of error. We thus affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK, P.J., and LUPER SCHUSTER, J., concur.

_____