[Cite as *Keller v. Chism*, 2019-Ohio-1714.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**PORTAGE COUNTY, OHIO**


JEFFREY KELLER, et al.,           :        **O P I N I O N**

            Plaintiffs-Appellees,           :

    - vs -           :           **CASE NO. 2018-P-0029**

MARK A. CHISM,           :

            Defendant-Appellant.           :


Civil Appeal from the Portage County Municipal Court, Ravenna Division, Case No. 2017 CVF 00918 R.

Judgment:  Affirmed in part; reversed in part and remanded.


*Frank J. Cimino*, 250 South Chestnut Street, Suite 18, Ravenna, OH  44266 (For Plaintiffs-Appellees).

*Joseph K. Oldham*, Oldham Company, LLC, 759 West Market Street, Akron, OH  44303 (For Defendant-Appellant).


THOMAS R. WRIGHT, P.J.

{¶1}     Appellant, Mark A. Chism, appeals the judgment awarding appellees compensatory and punitive damages following a jury trial.  We affirm in part, reverse in part, and remand.

{¶2}     Jeffrey Keller and his father Domer Keller (the Kellers) were walking Jeffrey's dog, a beagle named Bunny, on a trail in Mantua, Ohio when the three were attacked by Chism's three bullmastiffs.  Bunny was bitten, and Jeffrey incurred $524.81

in veterinary bills as a result of the dog's injuries. Jeffrey and Domer suffered minor injuries including emotional distress.

**{¶3}** The Kellers filed suit asserting claims for strict liability, negligence, and negligent infliction of emotional distress. They sought compensatory and punitive damages and attorney fees. Following jury trial, Jeffrey was awarded compensatory damages in the amount of $1,425: $500 for injury to his person and $925 for property damage consisting of $524.81 in veterinary bills and $400 for the reduced value of his dog. He was also awarded $500 punitive damages and attorney fees. Domer was awarded $500 compensatory damages for personal injury, $500 punitive damages, and attorney fees. The Kellers were awarded $9,356 in attorney fees for a total judgment of $11,781.

**{¶4}** Chism raises four assigned errors:

**{¶5}** "1. The Trial Court erred when it allowed the jury to award punitive damages and attorney fees under a [strict liability] claim against the Appellant.

**{¶6}** "2. The Trial Court erred when it admitted, over the objections of Appellant, prior citations the Appellant had received from the dog warden for dogs that were not involved in the incident in question.

**{¶7}** "3. The Trial Court erred when it allowed the jury to consider and award damages to Appellees Domer Keller and Jeffrey Keller for apparent emotional distress and injuries without any expert testimony that such injuries or damages were incurred.

**{¶8}** "4. The Trial Court erred when it allowed the jury to award damages other than the $524.81 of veterinary bills the dog incurred after the incident in question."

{¶9} Chism's first assignment correctly argues that the court erred in allowing the jury to award punitive damages pursuant to the Kellers' strict liability claims.

{¶10} The Kellers proceeded under three theories of liability at trial: strict liability pursuant to R.C. 955.28, common law liability, and negligent infliction of emotional distress. They sought compensatory and punitive damages as well as attorney fees.

{¶11} A dog owner's liability generally arises via two avenues, i.e., strict liability under R.C. 955.28 and the common law. These two theories are consistent with one another and may be pursued simultaneously. *Beckett v. Warren*, 124 Ohio St.3d 256, 2010-Ohio-4, 921 N.E.2d 624, ¶15. Upon pursuing both theories at trial, the trial court must ensure that the jury receives a "plain, distinct, and unambiguous statement of the law" consistent with the evidence presented at trial. *Id.* at ¶15-18.

{¶12} With limited exceptions not applicable here, R.C. 955.28 generally provides that a dog owner is absolutely "liable in damages for any injury, death, or loss to person or property" that is caused by the dog. *Id.* This strict liability arises regardless of the owner's negligence or fault. *Id.* Damages under strict liability are limited to compensatory or compensation for actual injuries incurred. *Beckett* at ¶11.

{¶13} To establish liability under the common law tort theory of liability for damage caused by a dog, a plaintiff must show: "(1) the defendant owned or harbored the dog, (2) the dog was vicious, (3) the defendant knew of the dog's viciousness, and (4) the dog was kept in a negligent manner after the keeper knew of its viciousness." (Citation omitted). *Id.* at ¶7. Unlike the strict liability theory of liability, "[t]he common law cause of action * * * provides a potential additional remedy—punitive damages * * *." *Id.* at ¶17.

3

**{¶14}** Thus, the trial court here erred as a matter of law when it instructed the jury on the law, over objection, and subsequently permitted the jury to award punitive damages and attorney fees under the Kellers' strict liability claim. The court told the jury in its instructions that if the jury found compensatory damages were warranted under strict liability, then it was permitted to also award punitive damages and attorney fees. Consistent with this misstatement, the court then permitted the jury to complete written interrogatories in which it awarded punitive damages and attorney fees under the Kellers' strict liability claim. As stated, the jury completed the interrogatories and awarded Jeffrey and Domer each $500 in punitive damages, for $1,000 total, in addition to attorney fees pursuant to strict liability.

**{¶15}** The jury likewise considered interrogatories addressing Chism's alleged "negligence" claim under which the jury awarded no damages. All eight jurors agreed that that the dogs in issue were not vicious. The jurors also unanimously agreed in a separate interrogatory that Chism did not know of the dog's viciousness before the incident with the Kellers and that Chism was not negligent in keeping his dogs.

**{¶16}** Because punitive damages and attorney fees are *not* authorized under strict liability and this is the unequivocal basis for the jury's award here, we reverse and vacate the $500 punitive damage awards to Domer and Jeffrey and the award of attorney fees because each is premised on a clear error of law. *Beckett v. Warren*, 124 Ohio St.3d 256, 2010-Ohio-4, 921 N.E.2d 624. And because the jury also unanimously rejected the Keller's only theory of liability that could have resulted in punitive damages and attorney fees, i.e., the common law theory of liability, a new trial is not warranted.

**{¶17}** Accordingly, Chism's first assigned error has merit.

**{¶18}** Chism's second assigned error contends the trial court erred in permitting the Kellers to introduce evidence of Chism's prior citations involving a dog bite and leash violations because these prior incidents involved different dogs. We agree.

**{¶19}** "The admission of evidence is within the discretion of the trial court. *State ex rel. Elsass v. Shelby Cty. Bd. of Commrs.* (2001), 92 Ohio St.3d 529, 533, 751 N.E.2d 1032. The trial judge is in a significantly better position to analyze whether testimony or evidence is relevant or irrelevant and the impact of the evidence on the jury; thus the court's decision will be reversed only upon a showing of an abuse of discretion. *Renfro v. Black* (1990), 52 Ohio St.3d 27, 31, 556 N.E.2d 150. * * * The abuse of discretion must materially prejudice a party in order for the trial court's decision to be reversed. *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d 1291." *Banford v. Aldrich Chem. Co. Inc.,* 126 Ohio St.3d 210, 2010-Ohio-2470, 932 N.E.2d 313, ¶38.

**{¶20}** "[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.' *State v. Beechler,* 2d Dist. No. 09-CA-54, 2010-Ohio-1900, 2010 WL 1731784, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11. When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.' *Id.* at ¶67." *Ivancic v. Enos,* 11th Dist. Lake No. 2011-L-050, 2012-Ohio-3639, 978 N.E.2d 927, ¶70.

5

{¶21} "Evidence which is not relevant is not admissible." Evid.R. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

{¶22} As stated, to prevail on a common law claim for liability involving a dog, a plaintiff must prove, in part, that the dog in question is vicious, that the owner knew of the dog's vicious propensity, and that the owner or keeper kept the dog in a negligent manner after knowing of its viciousness. *Beckett, supra.* Thus, a dog owner's prior problems or citations involving different dogs is not relevant because the common law cause of action only concerns itself with prior incidences with the dog involved in the present case. *Id.*

{¶23} Here, the trial court permitted the Kellers to introduce evidence of three incidents involving Chism and his prior dogs over objection. His neighbor had called the police about his dogs running at large while Chism was at work. None of the citations involved the dogs in issue here, which are bullmastiffs. Instead, Chism confirmed that these prior incidents involved his other dogs.

{¶24} On another occasion, Chism's chocolate Labrador bit his grandchild, but only after the child jumped on the dog. The dog was quarantined for ten days as a result. As argued, this incident is not relevant to the Kellers' claims because it did not involve Chism's bullmastiffs.

{¶25} None of the prior incidents introduced at trial involved the dogs that were involved in the attack on the Kellers and Bunny. The introduction of evidence of this nature was irrelevant and should have been excluded. Notwithstanding, we cannot find the error materially prejudiced Chism in light of our reversal of the punitive damages

award, and as such, reversal on this basis is not warranted. *Southard Supply, Inc. v. Anthem Contractors, Inc.,* 10th Dist. Franklin No. 16AP-545, 2017-Ohio-7298, ¶27.

**{¶26}** Chism's second assigned error is overruled.

**{¶27}** Chism's third assigned error claims the trial court committed reversible error in allowing the jury to award damages to Domer and Jeffrey for emotional distress and injuries without corresponding expert testimony.

**{¶28}** The jury's completed interrogatories make clear that both Domer and Jeffrey were awarded $500 each in compensatory damages for injury to their persons pursuant to their strict liability theory of liability. The jury separately awards Jeffrey $925 for his property damage, and we address Chism's arguments regarding this amount under his next assignment.

**{¶29}** "The general rule is that 'the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion.' *Darnell v. Eastman* (1970), 23 Ohio St.2d 13, 17, 261 N.E.2d 114. An exception exists if the cause and effect are so apparent that they are matters of common knowledge. *Id.*" *Garcea v. Woodhull,* 9th Dist. Wayne No. 01CA0069, 2002-Ohio-2437, ¶11.

**{¶30}** "'Since pain and suffering are subjective feelings, the injured person's testimony is the only direct proof of such damages. An expert can support such evidence only indirectly. Therefore, lay testimony is sufficient by itself to prove past pain and suffering damages.'" *Barker v. Netcare Corp.,* 147 Ohio App.3d 1, 2001-Ohio-3975, 768 N.E.2d 698, ¶73 (10th Dist.), citing *Youssef v. Jones*, 77 Ohio App.3d 500, 505, 602 N.E.2d 1176 (1991); *Turner v. Barrett*, 68 Ohio App.2d 80, 81, 426 N.E.2d 1193, 1194

7

(10th Dist.1980)("clearly a layman may testify regarding his pain and suffering where the damages are not so great as to require expert testimony."); *Eastham v. Nationwide Mut. Ins. Co.,* 1st Dist. Hamilton No. C-910623, 1992 WL 188616, *2.

{¶31} Moreover, an individual suffering a bite or other injury from a dog who seeks compensation under the strict liability statute is allowed to seek damages for emotional distress, which is one aspect of pain and suffering. *Powell v. Finfrock,* 4th Dist. Adams No. 501, 1990 WL 193463, *2.

{¶32} As argued, neither Domer nor Jeffrey sought medical treatment, incurred medical expenses, or had an expert testify as to the cause of their injuries. Each did, however, testify about their minor injuries and emotional difficulties following the incident.

{¶33} Domer explained that he and his son Jeffrey and his dog were walking the trail when a large dog approached them. It started growling and was jumping on Jeffrey and bit his dog Bunny before two more dogs came over the hill. The three dogs were circling the men and jumping on them. Domer was 80 years old at the time. He explained:

{¶34} "[Jeffrey] put Bunny over his head and [was] hollering to get him off of me, and I was swatting and kicking and my arm got bruised. Well, the right one anyhow got some scratches and some bruises.

{¶35} "* * *

{¶36} "Q. * * * As far as your emotions during this time, what are you concerned with and what are you thinking?

{¶37} "A. Well, I'm concerned about the dogs biting Bunny and biting us.

{¶38} "Q. * * * [W]here were the dogs as far as your body was concerned? Where were they located?

8

{¶39} "A.  One come right up over my back, and I don't know they [were] in front of me, to the side of me, circling us.

{¶40} "* * *

{¶41} "A.  I was afraid I was really going to get chewed up, and especially Bunny because she had already been bitten and bleeding.

{¶42} "* * *

{¶43} "* * * [T]o have a pack of dogs jumping all over you and growling, * * * it's enough to scare anybody.

{¶44} "* * *

{¶45} "Q.  Were [the dogs] as large as you were?

{¶46} "A.  Yes.  Jeff's over six foot and they [were] jumping up.  He was holding the dog up and they [were] jumping up at Bunny with him over his head.

{¶47} "* * *

{¶48} "* * * [T]here was blood.  I didn't know whether that was coming from him or Bunny.  I just [saw] it running down his arm.

{¶49} "Q.  Do you have an idea of about how long these dogs were jumping up onto you and attacking you?

{¶50} "A.  It seemed like an eternity, but probably a couple of minutes."

{¶51} Domer did not fall despite these large dogs jumping on him, and he did not tell the police he was injured.  Instead, he explained that he was too excited and worried about Bunny, not himself.  Domer recalls having bruising and a scratch on his forearm that lasted four or five days.  He did not take any photos of his injuries.  When asked

9

about bruising on his back from the dog jumping on him, Domer explained that he cannot "see back there".

**{¶52}** After the attack, Domer no longer walks the trails because he is afraid of being attacked. On cross-examination, Domer confirmed that he never saw a doctor for his injuries and did not seek treatment or therapy.

**{¶53}** Jeffrey testified that he was holding Bunny over his head after one of the three dogs began attacking Bunny. He recalls these large, one-hundred-pound dogs repeatedly jumping on them, and Jeff had one of the dogs, which was as big as he is, hanging from his shoulders. Jeffrey recalls being worried about his dog and father. Jeffrey described the incident as "complete chaos" and recalls being "worried for my own life." Jeffrey was yelling and screaming for the owner to get the dogs off of them. Jeffrey also recalls being "scratched up," but none of his scratches were deep because he had a long-sleeved shirt on at the time. He did not photograph his injuries or tell the police he was injured because he was focused on his dog's well-being.

**{¶54}** In addition to the scratches, Jeffrey explained being emotionally damaged by the incident, explaining that he no longer freely goes out and walks the trails without feeling fearful. He also described this incident as altering his dad's life.

**{¶55}** Based on the foregoing, there was competent and credible evidence demonstrating that Domer and Jeffrey incurred some physical and emotional injuries. That they incurred scratching and bruising from large dogs jumping on them are matters of common knowledge, and thus, do not necessitate expert testimony to relate the injuries to the incident. *Garcea v. Woodhull,* 9th Dist. Wayne No. 01CA0069, 2002-Ohio-2437, ¶11; *Darnell v. Eastman*, 23 Ohio St.2d 13, 17, 261 N.E.2d 114 (1970).

10

**{¶56}** Chism's third assigned error lacks merit and is overruled.

**{¶57}** Chism's fourth and final assignment raises two arguments. He first claims the trial court erred as a matter of law in awarding property damage in excess of the $524.81 veterinary bills incurred from the incident. Chism also contends that the jury's basis for the $400 in excess of the veterinary bills is so unclear that it must be reversed or that we should reduce the award to the veterinary bills only.

**{¶58}** "Typically, damages for loss of personal property are limited to the difference between the property's fair market value before and immediately after the loss. *Akro–Plastics v. Drake Industries* (1996), 115 Ohio App.3d 221, 226, 685 N.E.2d 246. * * * In *McDonald v. Ohio State Univ. Veterinary Hosp.* (1994), 67 Ohio Misc.2d 40, 644 N.E.2d 750, the Court of Claims did award $5,000 in damages for a German Shepard pedigree dog who was paralyzed as the result of the admitted malpractice of the state veterinary hospital. The court recognized that market value is the normal standard, but believed that the standard of value to the owner could be used 'in exceptional circumstances.' Id. at 42, 644 N.E.2d 750. The court then applied that standard based on the dog's unique pedigree and time invested in specialized, rigorous training, which established that a similar dog was not available on the open market. Id. Notably, the court also stressed that sentimentality is not a proper element in determining damages caused to animals. *Id*. The amount ultimately awarded included damages for the animal's loss, plus potential earnings from stud fees." *Oberschlake v. Veterinary Assoc. Animal Hosp.*, 151 Ohio App.3d 741, 2003-Ohio-917, 785 N.E.2d 811, ¶9 (2d Dist.).

**{¶59}** Further, in *Saratte v. Schroeder*, 7th Dist. Belmont No. 08-BE-18, 2009-Ohio-1176, ¶17, the Seventh District Court of Appeals held that it is reasonable to award

11

as damages a pet owner's costs incurred at the veterinarian's office when a pet is injured by another's dog. Awarding the costs to treat a pet's injuries when injury arises via another's animal is consistent with other decisions allowing veterinary bills associated with veterinary malpractice and negligently damaging another's pet. *Id. at* ¶17 ("damages have been properly allowed for costs connected with an improper veterinary surgery (*Oberschlake,* 151 Ohio App.3d 741, 785 N.E.2d 811), [and] with veterinary bills incurred when a dog was [negligently] injured by electric fence (*Pacher v. Invisible Fence of Dayton,* 154 Ohio App.3d 744, 798 N.E.2d 1121, 2003-Ohio-5333)").

**{¶60}** The dog in *Sarratte* died, and the court of appeals affirmed the trial court's decision awarding both the fair market value of the dog and the reasonable expenses incurred trying to save its life. *Id.* at ¶6.

**{¶61}** The Sixth District agrees with the decision in *Sarratte* to allow as damages a plaintiff's reasonable veterinary expenses that arise from a dog bite or attack. *Rego v. Madalinski,* 6th Dist. Lucas No. L-16-1030, 2016-Ohio-7339, 63 N.E.3d 190, ¶11. *Rego* explained:

**{¶62}** "[P]ets do not have the same characteristics as other forms of personal property, such as a table or sofa which is disposable and replaceable at our convenience. Accordingly, additional factors should be considered in fashioning an appropriate economic damages award due to loss or injury. Such factors include fair market value, age of the pet, pedigree, training, breeding income, recommendation of the treating veterinarian, circumstances of the injury, and anticipated recovery. The overriding consideration is the reasonableness of the expenses and is fact specific. *Irwin v. Degtiarov,* 8 N.E.3d at 301 (Mass.App.2014)." *Id.*

12

{¶63} We agree with the holdings of the Second and Sixth Districts in *Oberschlake* and *Rego* that damages are fact intensive in light of the evidence presented.

{¶64} Here, Jeffrey incurred $524.81 in veterinary bills for Bunny's care following the incident. And like the plaintiffs in *McDonald v. Ohio State Univ. Veterinary Hosp.,* as discussed in *Oberschlake,* Jeffrey introduced evidence about Bunny's reduced value based on the dog's pedigree and its rabbit hunting training.

{¶65} Larry Arnold, a Beagle breeder and trainer testified that Bunny is an AKC registered and pedigreed Beagle that comes from a long line of field champions. Jeffrey traded with Larry for Bunny as a puppy, which normally sells for $300 or $400. Bunny was spayed, and Jeffrey had no intent to sell the dog. The dog was two years old at the time of the attack.

{¶66} Larry explained that to get a dog at the champion level you must train it or run it at least three times a week. He has observed Bunny in the field and believes, based on his experience, that she could be a champion. He estimates Bunny's fair market value before the attack at $1,500 based on her ability, pedigree, and background. Jeffrey testified that he ran Bunny or trained her for rabbit hunting three or four times a week before the attack, and although he had not yet competed with her, Jeffrey believed Bunny was on track to be a champion rabbit hunter.

{¶67} However, after the attack, Domer and Jeffrey both described Bunny as a different dog that no longer hunts.

{¶68} Accordingly, although the jury's $925 property damage award is not precisely calculable, it is consistent with and supported by the evidence. Chism's fourth assigned error lacks merit.

{¶69} The trial court's decision is affirmed in part, reversed in part, and remanded. On remand, the trial court shall enter judgment consistent with this opinion and vacate the awards for punitive damages and attorney fees.

CYNTHIA WESTCOTT RICE, J.,

TIMOTHY P. CANNON, J.,

concur.